Argued and submitted March 2, temporary rules held valid March 31, 1999

## Sara VIER,
### a minor,
### by and through her Guardian Ad Litem,
### Karen S. Torry,
*Petitioner,*

*v.*

## STATE OFFICE FOR SERVICES TO CHILDREN AND FAMILIES,
*Respondent.*

## (CA A104361)

977 P2d 425

Angela Sherbo argued the cause and filed the brief for petitioner.

Mary H. Williams, Assistant Solicitor General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DEITS, C. J.

**DEITS, C. J.**

Petitioner challenges the validity of a number of temporary rules adopted by the State Office for Services to Children and Families (SCF). ORS 183.400(4)(c). Petitioner argues that the rules are invalid because they were not adopted in compliance with applicable rulemaking procedures. We affirm.

In 1997, the Oregon Legislature adopted ORS 419B.192, which governs the placement of children by SCF. That statute provides:

"(1) If the court finds that a child is in need of placement or continuation in substitute care, *there shall be a preference given to placement with relatives and persons who have a child-parent relationship with the child as defined in ORS 109.119 (5).* The State Office for Services to Children and Families shall make reasonable efforts to place the child with such persons and shall report to the court what efforts were made to effectuate such a placement.

"(2) In attempting to place the child pursuant to subsection (1) of this section, the office shall consider, but not be limited to, the following:

"(a) The ability of the person being considered to provide safety for the child, including a willingness to cooperate with any restrictions placed on contact between the child and others, and to prevent anyone from influencing the child in regard to the allegations of the case;

"(b) The ability of the person being considered to support the efforts of the office to implement the permanent plan for the child;

"(c) The ability of the person being considered to meet the child's physical, emotional and educational needs; and

"(d) Which person has the closest existing personal relationship with the child if more than one person requests to have the child placed with them pursuant to this section.

"(3) Notwithstanding subsections (1) and (2) of this section, in cases where the Indian Child Welfare Act applies, the placement preferences of the Indian Child Welfare Act shall be followed." (Emphasis added.)

At the time of the adoption of ORS 419B.192, SCF had in effect numerous administrative rules governing the adoptive placement of children within the jurisdiction of SCF. Under those rules, SCF could consider a current caretaker as an adoptive placement resource. OAR 413-120-0500. A "current caretaker" included a nonrelated foster parent who had had a child in his or her home for a minimum of six months. OAR 413-120-0510(2).

In February 1998, the administration of SCF determined that it was necessary to revise some of the agency's administrative rules to reflect "legislative and philosophical changes"; in particular to conform to the changes in ORS 419B.192. The administration directed staff to make a number of changes in practice. Of significance here, one of the changes that SCF staff was directed to make was to consider relatives as adoptive placement resources before all other persons. The memo to staff from SCF's Administrator states, in part:.

> "a.   Relative resources will be sought out, assessed and considered *first* and *alone* for all children in SCF care, *before* consideration of the foster provider as a permanent resource for a child in their care.

> "b.   Whenever a relative family desires to be a permanent resource for a child and meets the criteria outlined in #4, above, SCF will be making efforts to achieve the relative placement." (Emphasis in original.)

In September 1998, SCF determined that the practice changes that it had made with respect to placement should be adopted as temporary rules. The agency concluded that this was necessary because the change in practice was inconsistent with the agency's existing administrative rules. The existing rules allowed for the consideration of caretakers who were not relatives as adoptive placement resources, while under the agency's new policy relatives must be considered as adoptive resources first. Consequently, SCF adopted the temporary rules that are challenged here, OAR 413-070-0060 through 413-070-0098, and temporary amendments to OAR 413-120-0500 through 413-120-0530.

On appeal, petitioner argues that SCF's temporary rules are invalid because SCF did not comply with applicable

rulemaking procedures. ORS 183.335(5) governs the adoption of temporary rules by an agency that is subject to the Administrative Procedures Act (APA). That statute sets forth the procedures for adoption of temporary rules:

"(5)  Notwithstanding subsections (1) to (4) of this section, an agency may adopt, amend or suspend a rule without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, if the agency prepares:

"(a)  A statement of its findings that its failure to act promptly will result in serious prejudice to the public interest or the interest of the parties concerned and the specific reasons for its findings of prejudice;

"(b)  A citation of the statutory or other legal authority relied upon and bearing upon the promulgation of the rule;

"(c)  A statement of the need for the rule and a statement of how the rule is intended to meet the need;

"(d)  A list of the principal documents, reports or studies, if any, prepared by or relied upon by the agency in considering the need for and in preparing the rule, and a statement of the location at which those documents are available for public inspection[.]"

Petitioner argues that the agency failed to satisfy the requirements of ORS 183.335(5) for the adoption of a temporary rule. Specifically, petitioner contends that the agency's findings regarding the need to act promptly under subsection (5)(a), the agency's statement of need for the rule under subsection (5)(c), and the documents relied on by the agency under subsection (5)(d) are all insufficient.

SCF's findings relating to subsection (5)(a) are as follows:

"**Justification of Temporary Rule(s):** Failure to adopt these temporary rules will result in serious prejudice to SCF, some children in its custody, some families, and potential adoptive parents. Currently, SCF is putting into practice expectations in Oregon and federal law, as well as its own mission and values, without the structure and detail of administrative rule. Some of the practice directives that are not in rule form are in conflict with current rules. If these rules are not filed immediately, relatives of children in care may not receive the consideration that is their right,

children may end up separated from their relative families, and the conflict between the practice directives in memo form and the current rules will result in contested adoptions. Filing of the rules will make expectations clear to staff, relatives, and foster parents, and guarantee that relatives and intervenor foster parents have certain rights and responsibilities."

SCF's statement of need provides:

"**Need for the Temporary Rule(s):** Both Oregon and federal statutes name relatives as the placement of preference for children. These rules describe how SCF will search for and work with the relatives of children in SCF custody to develop placements and concurrent permanency plans for these children which consider relatives and certain persons with relationships to the child first and alone before consideration of non-related, recruited resources. The new, 'Working With Relatives Toward Placement of Children' rules codify in rule form previous memos and practice expectations. The changes to the 'Current Caretaker Adoption Planning' rules align these rules with the practices required in the 'Working With Relatives Toward Placement of Children' rules."

Petitioner argues that SCF has not demonstrated a need to act promptly and that SCF waited too long to adopt this rule to justify its adoption as a temporary rule. Petitioner points out that the amendments to the statute that SCF seeks to implement with this rule change were in effect for over a year before the agency adopted the temporary rule. Also, petitioner observes, the agency's memorandum directing the staff to change its practices was issued about six months before the agency decided to adopt this rule on a temporary basis. Petitioner asserts that there was no emergency or, if there was one, it was one of SCF's own making.

■■ It is important to recognize at the outset that the APA imposes on agencies the obligation to adopt and implement policies that affect the public through formal rulemaking. ORS 183.310(8); ORS 183.335. Once an agency has done so, it must similarly use formal rulemaking to amplify or refine an existing rule. *Fulgham v. SAIF*, 63 Or App 731, 666 P2d 850 (1983). Moreover, an agency remains bound by the practices and policies declared by its rules, even in the face of

newly enacted legislation changing the agency's responsibilities, unless and until the existing rules are judicially declared invalid or are changed by the agency pursuant to formal rulemaking procedures. *Burke v. Children's Services Division*, 288 Or 533, 538, 607 P2d 141 (1980).

We, therefore, are not persuaded by petitioner's argument that, because the exigency here is, in part, one of the agency's own making, the rule must be invalidated. To be sure, there may be circumstances in which an agency, in anticipation of a prospective effective date for new legislation, will begin the process of necessary formal rulemaking in advance so that the effective date of new legislation and new rules to implement that legislation precisely coincide. However, generally, the fact that an agency does not achieve that coincidence cannot be the basis for invalidating the otherwise proper adoption of a temporary rule. An agency may not initially recognize that new legislation conflicts with its former policies so as to require a repeal of a past rule. An agency also may mistakenly believe that the effect of legislation dictates only an internal change of emphasis that remains consistent with formally promulgated rules. Nonetheless, when an agency discovers that its adopted rules are inconsistent with legislative directives, the agency may, and in fact must, amend, repeal, or otherwise modify those rules properly to implement legislative policy. When the mismatch between legislative and agency policy actually exists, it is in the public interest and the interest of the parties concerned immediately to clarify the agency's position and advise all those affected through the adoption of a temporary rule. For those reasons, a determination by the agency that new legislation has effected a change in policy requiring a complementary change in agency rules generally will satisfy the directive in ORS 183.335(5)(a) to demonstrate an emergency. We conclude that SCF's determination that, under the circumstances here, the amended statute required the adoption of the temporary rules satisfies the requirement of ORS 183.335(5)(a).

Petitioner also challenges the adequacy of the agency's statement of need. Petitioner's argument in that regard has a substantive component, namely, that the agency is wrong on the law—that is, that SCF's conclusion

that ORS 419B.192 applies to adoptive parents and requires SCF to give a preference to relative placements is an incorrect reading of the statute. Consequently, in petitioner's view, there was no need for the agency to adopt the temporary rules.

■■ Petitioner's argument misunderstands the nature of our review of this type of agency action. Review of the adequacy of a "statement of need" for the adoption of a temporary rule is made in the context of whether the agency substantially complied with rulemaking *procedures*. Under ORS 183.335(5)(c), the agency is required to articulate an explanation for the need to adopt a temporary rule. The statement of "need" required for a temporary rule is identical to that required for permanent rulemaking. ORS 183.335(2)(b)(C) ("need" statement consists of a "statement of the need for the rule and a statement of how the rule is intended to meet the need"). In reviewing the adequacy of an agency's need statement, it is not the function of a reviewing court to assess the substance of the agency's asserted "need" for change or clarification of a rule. Rather, the "need" contemplated by that statute is "a need that the rule-proposing agency *perceives*." *Fremont Lumber Co. v. Energy Facility Siting Council*, 325 Or 256, 262, 936 P2d 968 (1997) (emphasis in original). Thus, it is enough here that SCF perceived a need for rulemaking and adequately explained that perception in its statement of need. *Id.* We conclude that the agency's statement of need in this case satisfies that standard, and the agency complied with applicable rulemaking procedures.[1]

Temporary rules held valid.

---

[1] If petitioner or others desire to challenge the rule as beyond the agency's statutory authority, that is an independent basis for objection, one that may be brought against any agency rule. ORS 183.400(3)(b). Petitioner has not brought a challenge on that ground here and is not precluded from doing so with respect to any rule that SCF may adopt. We express no opinion here as to the correctness of the agency's understanding of whether the substantive policy contained in its rule is consistent with or required by ORS 419B.192.